# Wytheville.

## Funch, Edye & Co., Inc. v. Gulf Smokeless Coal Company.

### June 16, 1927.

1. Agency—*Liability of Agent—Disclosed and Undisclosed Principal—Case at Bar.*—The instant case turned on the question of whether or ι· all contracts, or orders, received by plaintiff from defendant in connection with the sale and delivery of coal by plaintiff which was the subject of the litigation, were contracts, or orders, from the defendant as agent of a known principal. From letters and other testimony it appeared that plaintiff had entered into a conta ct with a foreign corporation whereby the corporation was to purchase coal from plaintiff. Defendant became the American agent of this foreign corporation. Plaintiff recognized this status. This relationship continued for a number of years when plaintiff discovered that its Norfolk manager had embezzled the sum sued for in this action, which sum had been paid him for the coal furnished certain ships of the foreign corporation. Then, for the first time, plaintiff claimed that the coal furnished was supplied on the account of the defendant as principal and not as agent of the foreign corporation. Plaintiff knew that the vessels supplied with the coal were vessels either owned or controlled by the foreign corporation. Plaintiff contended that the contract with the foreign corporation had been terminated. This contract provided that it was to continue until notice of termination. No such notice was ever given.

   *Held:* That defendant was not acting as a principal but in conformity with a long course of dealing between the parties as the agent of the foreign corporation.

2. Agency—*Liability of Agent—Duty of Agent to Third Persons—Case at Bar.*—In the instant case, an action by a seller of coal against the agent of the purchaser, the seller alleged that even though defendant was not liable as principal it should be held liable as agent for an improper payment to the manager of plaintiff. There was evidence which tended to show that plaintiff did notify defendant to make payments directly to plaintiff and not to the manager. Plaintiff relied upon the principle that an agent who violates a duty which he owes to a third person is answerable to such person for the con-

sequences whether it be an act of malfeasance, misfeasance or nonfeasance.

*Held:* That this principle did not apply to an action to recover upon a contract and that defendant, acting as agent, was not liable to plaintiff.

Error to a judgment of the Circuit Court of the city of Norfolk in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Hughes, Little & Seawell,* and *Burlingham, Veeder, Masten & Feary,* for the plaintiff in error.

*Baird, White & Lanning* and *J. P. Jackson,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Defendant in error filed a notice in writing of a motion for judgment against the plaintiff in error (hereinafter called defendant) for the principal sum of $20,-296.85, claimed from the defendant as the alleged purchaser of bunker coal supplied to steamships at Norfolk, as follows:

| | |
|---|---:|
| April 10, 1921, S. S. Petersham | $ 5,168 29 |
| September 7, 1921, S. S. Chiswick | 1,304 89 |
| November 5, 1921, S. S. Antonina | 1,921 50 |
| November 10, 1921, S. S. Twickenham | 11,902 17 |

There was a trial by jury which resulted in a verdict for plaintiff, upon which verdict the court entered judgment in the principal sum of $20,296.85.

Defendant assigns eleven errors to the action of the court in giving four instructions for the plaintiff and

refusing others asked for by the defendant, and in refusing to set aside the verdict of the jury.

After a most careful consideration of the record, we are of the opinion that the case turns on the question whether or not all contracts, or orders, received by plaintiff from defendant, if any, in connection with the sale and delivery of the coal, which is the subject of this litigation, were contracts, or orders, from the agent of a known principal.

Plaintiff, a coal mine operator at Tams, West Virginia, on December 14, 1914, entered into an arrangement appointing Watts, Watts & Company, Ltd., an English corporation, plaintiff's selling agents for coal at the port of Norfolk. The terms of the arrangement were covered by a letter from Watts, Watts & Company to plaintiff's president, W. P. Tams, Jr., dated December 14, 1914, as follows:

"Referring to the correspondence passed with our friends, Messrs. Funch, Edye & Company of New York, we shall be pleased to act as your agents for the sale of bunker coals at Hampton Roads, such arrangement to be for twelve months certain, i. e., for the year 1915 and to continue in force thereafter from year to year subject to either party giving to the other three months' notice to terminate the arrangement; such notice to expire on the 31st of December in any one year. It is understood that commission is to be fifteen cents per ton on all supplies made through our instrumentality, accounts being settled half yearly. It is understood that your price will not exceed those of other leading coal suppliers at Hampton Roads, but we hope you will be able, particularly at the commencement of the business, to put us in a favorable position as to price to secure contracts."

The plaintiff's agreement to this was embodied in

letters of its president of December 14, 1914, and January 4, 1915, to Watts, Watts & Company, London. While spoken of as a selling arrangement on commission, this, in fact, was a sale of coal to Watts, Watts & Company, as disclosed by the record.

In turn, the defendant, a Delaware corporation, with its office in New York city, became the American agent for Watts, Watts & Company. That plaintiff recognized this status is evidenced by a letter written to A. C. Odend'hal, its manager at Norfolk, on December 22, 1914, saying: "Commencing the first day of January we have an arrangement to bunker vessels and furnish cargoes from time to time to Watts, Watts & Company of London through their agents on this side, Funch, Edye & Company, of New York."

On September 10, 1917, plaintiff wrote a letter to Dr. H. A. Garfield, coal administrator, which, so far as pertinent to this case, is as follows:

"I am enclosing you herewith copy of our letter to Funch, Edye & Company, New York, who are the American representatives for Watts, Watts & Company, London. You will note from this letter that we sold to them on August 25th a cargo of coal of five to seven thousand tons for foreign shipments, to be shipped during the month of October or November. We have also given them an option on six to eight thousand five hundred tons of coal to be' loaded at Sewall's Point September 30th. The price named by us being $5.10 per gross ton Sewall's Point, this being the same as the contract price we have with Watts, Watts & Company for bunker coal."

On November 3, 1921, plaintiff wrote a letter directed to W. M. Gavigan, treasurer of defendant, which contains this language: "This confirms exchange of telegrams and our agreement to bunker S/S Twicken-

ham at $4.90 per gross ton, net to us f. o. b. piers. We have been moved to make this concession by the feeling that our connection with Messrs. Watts, Watts & Company has continued for too long a time to be broken off by what we feel to be a mistake in judgment on the parts of our good friends * * *. I submit these thoughts for the careful consideration of yourself as the representative, in this matter, of Messrs. Watts, Watts & Company."

The record also discloses that, as agent for Watts, Watts & Company, defendant paid the bills due plaintiff for coal supplied from time to time and charged same to Watts, Watts & Company. It is also shown that plaintiff during a period of years paid defendant, as agent for Watts, Watts & Company, the commissions or rebates, due under the agreement of December 14, 1914, and that defendant, in turn, credited these payments to the account of Watts, Watts & Company.

We have set forth the conditions in order to show the dealings between the parties during this period. No trouble occurred between the parties until, in 1921, the discovery was made that Odend'hal, the Norfolk manager of plaintiff, had embezzled the sum sued for, which sum had been paid him for the coal furnished the ships mentioned, *supra.* Then, for the first time, plaintiff claimed that the coal furnished these ships was supplied on the account of defendant, as principal, and not as agent of Watts, Watts & Company.

That plaintiff knew the vessels supplied with coal were vessels either owned or controlled by Watts, Watts & Company, is manifest from the correspondence and oral evidence on the subject. Gavigan, treasurer of the defendant, testified as follows:

"Q. Have you any personal knowledge with respect to the steamships 'Petersham,' 'Antonina,' 'Chiswick'

and 'Twickenham,' which were bunkered during the year 1921 by Gulf Smokeless Coal Company?

"A. I remember that we handled them and placed the bunkering with the Gulf Smokeless Coal Company. We were acting in accordance with the instructions on behalf of Watts, Watts & Company.

"Q. And they were handled locally through the United States Shipping Company here as ship agents?

"A. The United States Shipping Company acted as ship's agents.

"Q. It appears that they disbursed for the ships, Mr. Gavigan. Do you know whether or not they were reimbursed by Funch, Edye & Company for those disbursements?

"A. They were reimbursed by Funch, Edye & Company.

"Q. And do you know whether or not Funch, Edye & Company were, in turn, reimbursed by Watts, Watts & Company for those disbursements?

"A. Funch, Edye & Company were reimbursed by Watts, Watts & Company.

"Q. So that the final responsibility for the bills, really, was Watts, Watts & Company, was it, on all four of them?

"A. That is correct."

Gavigan also testified that during the period from 1915, to the sale of the coal in issue, defendant was the general agent of Watts, Watts & Company, and that this was known to the plaintiff.

W. P. Tams, Jr., president of plaintiff, testified that the agreement between plaintiff and Watts, Watts & Company had ceased to exist prior to the dates of the sale of coal in litigation, and that he "considered" that plaintiff was making sale direct to defendant. On what date the contract was abrogated, Tams does not

state and we have been unable to find the date of such abrogation in the record. We do find the following appearing in the testimony of Tams:

"Q. You had a contract with Watts, Watts & Company for delivery to their steamers?

"A. We had in 1914.

"Q. And that arrangement continued through that period, the price varying from time to time up till 1922, didn't it?

"A. But we considered after the first year or two that we were dealing with Funch, Edye & Company, as prices were negotiated with them, settlements made by them, notifications of boats made by them.

"Q. You knew, however, that they did not own any of these steamers, did you not?

"A. Yes, sir.

"Q. And that they were Watts, Watts & Company's steamers?

"A. We also knew that Watts, Watts & Company felt free to purchase its bunker supplies elsewhere during the last years.

"Q. Could have purchased them elsewhere if they had wanted to, that was your opinion?

"A. Yes, sir.

"Q. But Funch, Edye & Company ordered on behalf of them for these particular vessels from you?

"A. They bought from us; yes, sir.

"Q. For the account of Watts, Watts & Company?

"A. That is a point of law that I will leave you lawyers to wrangle over."

Though the contract provided that Watts, Watts & Company were to act as agents for plaintiff "for the year 1915, and to continue in force thereafter from year to year subject to either party giving to the other

three months' notice to terminate the arrangement," we do not find that such notice was ever given.

The last delivery of coal was made to the S/S Twickenham on November 10, 1921, and though we find plaintiff claiming that the contract between itself and Watts, Watts & Company had ended at that time, the record discloses that on October 21, 1922, plaintiff wrote to Watts, Watts & Company as follows:

"We were approached by Funch, Edye & Company eight years ago with request that we take care of your boats at Hampton Roads and have you act as our bunker agents in London for the purpose of securing for us not only the bunkering of your boats but of other boats as well. * * * We accepted the proposition and formed a connection as suggested with your company. For a short time you were able to place with us the bunkering of other lines as well as your own, but in recent years the connection has resulted merely in our supplying your boats with bunker coal and allowing a commission which is really properly due only to an agent."

[1] Without setting forth in further detail the correspondence upon which plaintiff bases its claim that these sales were made direct to defendant as principal, we think it conclusively appears that defendant was not acting as a principal, but in conformity with a long course of dealing between the parties as the agents of Watts, Watts & Company.

It is contended, however, by plaintiff that, even though it be found that defendant is not liable as principal, it should, under the circumstances disclosed by the record, be held liable, as agent, for an improper payment to Odend'hal, manager of plaintiff, and cites the following to sustain its contention:

"An agent who violates a duty which he owes to a

third person is answerable to such person for the consequence, whether it be an act of malfeasance, misfeasance or nonfeasance * * *. If a servant owes a duty to a third person because of a contract with his master, there is no reason why he should not be liable for injury caused by its nonperformance * *. The servant's mere omission of duty towards his master will not give the person a right of action, but omitting to perform a duty which he and his master owe to a third person may give a right of action." 20 A. L. R. 99.

[2] There is evidence in the record which tends to show that plaintiff did notify defendant to make payments direct to plaintiff, and not to Odend'hal. This does not, however, in our view, change the legal situation, nor do we think the authority cited applicable to an action to recover upon a contract.

The judgment of the trial court will be reversed, the verdict of the jury set aside, and judgment entered in this court for the defendant, Funch, Edye & Company, Incorporated.

*Reversed.*